August Edward Miller and Eric Einar Runstrom, Plaintiffs-Appellants, v. Emil Malmquist, Defendant-Appellee.

Gen. No. 48,861.

First District, Second Division.

June 12, 1963.

Rehearing denied July 2, 1963.

William Elden, of Chicago, for appellants.

Seibert and Daniels, of Chicago, for appellee.

MR. JUSTICE BURKE delivered the opinion of the court:

Plaintiffs ask judgment for $3,912 (plus interest) from a sum of $4,339.92 which they paid under protest to defendant as the balance on a promissory note payable to the Claremont Instrument Co., Inc., secured by a chattel mortgage executed by plaintiffs and which note and mortgage had been assigned to the

defendant. The court held that a valid assignment had been made and entered judgment for the defendant. Plaintiffs assert that they performed certain "work" for the corporation in the amount of $3,912, that an account stated exists between the corporation and plaintiffs and that plaintiffs had a right to deduct this amount from the indebtedness on the note. Defendant denies that plaintiffs had the right to deduct from the balance due on the note because the note and the mortgage had been assigned to him by the corporation when the corporation was not indebted to the plaintiffs. Plaintiffs on the trial denied that they knew of the assignment and maintained that the assignment was invalid because it was not written on the note. In a trial without a jury judgment was given against the plaintiffs, who appeal.

In 1950, Emil Malmquist and his nephew Lee Gerald Carlson, formed a partnership to engage in the machine shop business. Their place of operation was the basement in the Carlson home. The business prospered and was incorporated as Claremont Instrument Co., Inc. The place of business was moved from the Carlson home to a building owned by Malmquist at 7807 S. Claremont Avenue in Chicago. The board of directors of the corporation consisted of Malmquist, the defendant, Lee Gerald Carlson and Margaret Carlson, his wife. The officers of the corporation were Lee Gerald Carlson, President, Margaret Carlson, Secretary and Malmquist, Treasurer. Malmquist leased the building that he owned to the corporation. Carlson and his wife owned 50% of the stock and the defendant the remaining 50%. The corporation operated its business with these shareholders owning shares of stock until June 1, 1954, when Mr. Carlson induced Mr. Roy Wood to come into the corporation and to buy the stock owned by the defendant, Malmquist. The latter transferred his stock to Roy Wood for $6,000. As the corporation was then

indebted to the defendant in the amount of $10,500 it gave defendant, Malmquist, an installment note secured by a chattel mortgage dated June 1, 1954, payable at the rate of $200 a month or more, including interest at 7% per annum, with a final payment due June 1, 1959. The corporation made 15 monthly payments on the note up to September 15, 1955, leaving a balance then due thereon of $8,331.49.

On or before September 15, 1955, plaintiffs negotiated with Mr. Carlson for the purchase of the machinery and equipment of the corporation and agreed to pay $13,000 therefor. To carry out this agreement plaintiffs paid $5,000 in cash and executed and delivered a note secured by a chattel mortgage dated September 16, 1955, for $8,000 payable at $200 or more per month commencing December 1, 1955 and $200 or more per month on the first day of each month thereafter including interest at 5% per annum for 39 months succeeding. As part of these negotiations, plaintiffs also arranged with defendant to lease his building for 5 years so that they could conduct their business from the same place that the corporation had been operating and where the machinery and equipment were located. Accordingly defendant leased to plaintiffs the space in his building where the corporation had been operating and where the machinery and equipment purchased by plaintiffs were located, in order that the plaintiffs could conduct business from that location.

The purchase of the machinery and equipment by plaintiffs was closed at the law office of Mr. Arthur Pierson who had prepared all the necessary documents. Present at the closing of this deal were plaintiffs, Mr. Pierson, Mr. Lee Carlson, Mr. Roy Wood and the defendant. The plaintiffs had been apprised that the defendant held an existing note secured by a chattel mortgage on the machinery and equipment

which they were purchasing and which had to be released. Malmquist agreed to release the chattel mortgage and cancel the note that he was holding and to accept in lieu thereof by assignment from the corporation plaintiffs' note secured by a new chattel mortgage for $8,000 which plaintiffs expected to sign in Mr. Pierson's office. The transaction was fully explained to all the parties by Mr. Pierson. The new note and chattel mortgage were signed and delivered by plaintiffs. The assignment of the new chattel mortgage by the corporation to the defendant, Malmquist, was delivered to the latter together with the new chattel mortgage and note that had been executed by the plaintiffs. At the same time Mr. Pierson delivered a copy of the assignment to plaintiffs. The corporation signed a letter of direction prepared by Mr. Pierson and addressed to the plaintiffs, dated September 16, 1955, notifying plaintiffs that payments on the chattel mortgage were to be made to Malmquist.

Defendant received the new chattel mortgage and note in the amount of $8,000 and the assignment and he surrendered the old chattel mortgage that he held on the machinery and equipment of the corporation. There was due on the mortgage and note that Malmquist surrendered $8,331.49. Counsel for plaintiffs inquire why defendant accepted an assignment of a new chattel mortgage and note for $8,000 when the amount due on the old chattel mortgage indebtedness was $8,331.49. The defendant answered this inquiry by producing a promissory note dated September 16, 1955, for $587.99, signed by Lee Carlson and Roy Wood and which included the $331.49, being the balance due defendant on the old chattel mortgage note that he had surrendered. The note for $587.99 was prepared on the day that all the parties met in attorney Pierson's office.

331

Plaintiffs admit that at the time they purchased the machinery and equipment from the corporation that it was not indebted to them. After plaintiffs took over the corporation's machinery and equipment which they purchased on September 16, 1955, they made the payments on the new chattel mortgage note directly to defendant, Malmquist, pursuant to the letter of direction and assignment of the chattel mortgage. Plaintiffs made 18 monthly payments on their note until it was paid down from $8,000 to $4,339.92. Plaintiffs, after operating their business for about two years with the machinery and equipment purchased from the corporation, decided to sell out to a third party. Plaintiffs at this time desired to pay off the balance due on the chattel mortgage note held by Malmquist for approximately 2 years and to whom they had been making their monthly payments pursuant to assignment. In the meantime the corporation become indebted to plaintiffs for "work" ordered by it after plaintiffs had purchased the machinery and equipment of the corporation. Plaintiffs said that the indebtedness of the corporation to them was $3,912. They now sought to deduct this indebtedness from the unpaid balance due on the chattel mortgage note held by the defendant. He refused to accept anything less than the full amount of the balance due him plus interest. Plaintiffs then paid the indebtedness on the note under protest. They brought the instant action to recover from Malmquist the $3,912 plus interest they claim was due them from the corporation and which they insist they had a right to deduct from the balance due on the note.

■ Plaintiffs rely strongly on the provisions of § 26, Chap 95, Ill Rev Stats 1961, that all mortgages shall when endorsed or assigned by the payee therein be subject to all defenses existing between the payee and the payor of the note the same as if the notes were held by the payee therein named. Plaintiffs say that

if these notes were held by the corporation there would be an undoubted right in the plaintiffs to set off the account stated of the indebtedness of the corporation to the plaintiffs against the indebtedness on the note secured by the chattel mortgage. Plaintiffs also point out that the assignment covered only the chattel mortgage and that it did not assign the note or the debt. They say further that the assignment of the mortgage alone passes no interest or title to the security until it is accompanied by a transfer of the debt.

There were no defenses existing between the makers, plaintiffs herein and the payee, the corporation, when the payee, the corporation, assigned the chattel mortgage to the defendant. The plaintiffs admit that the indebtedness of the corporation to them was incurred after the assignment of the chattel mortgage by the payee. By the terms of the statute on which they rely, plaintiffs have no right to deduct from the chattel mortgage note on which they are obligated the debt of the corporation incurred subsequent to the assignment of the chattel mortgage and note to defendant. Anderson v. South Chicago Brewing Co., et al., 173 Ill 213, 50 NE 655; Whitaker v. Ginger, 204 Ill App 632. Plaintiffs had knowledge of the assignment. The assignment was executed and delivered to Malmquist at the time and place when plaintiffs executed the mortgage and note and a copy of the assignment was then given to plaintiffs by the attorney who closed the deal. Plaintiffs recognized the assignment by subsequently making 18 monthly payments to the defendant.

■ Plaintiffs urge that the assignment did not include the note or the mortgage debt and that the assignment of the mortgage alone passes no interest in or title until accompanied by a transfer of the debt, citing Elvin v. Wuchetich, 326 Ill 285, 157 NE 243. In the case at bar the evidence establishes that the note, mortgage and assignment were delivered to de-

fendant by attorney Pierson in his law office. Plaintiffs are in no position to question the delivery of the note. They paid their monthly payment to defendant as assignee of the note for 2 years and reduced their indebtedness thereunder from $8,000 to $4,339.92. The case of Towson v. Smith, 292 Ill App 9, 10 NE2d 861, discusses and distinguishes the Wuchetich case. In the Towson case the court found that the testimony warranted the trial judge in finding that there was a good and valid assignment transferring to defendant all the right, title and interest in the new mortgage and note. There is no merit in plaintiffs' point.

■ Plaintiffs point out that the corporation cannot purchase its own stock where the purchase injuriously affects a creditor, that the capital stock is a fund set up for the payment of the debts and that a creditor has the right to pursue the property of the corporation to satisfy his claim. The transcript of the testimony shows that the stock was purchased by Roy Wood. The machinery and equipment that was used by the corporation had been acquired and paid for by Malmquist when he went into business with his nephew Lee Carlson. The testimony establishes that Roy Wood bought defendant's stock in the corporation and paid defendant $6,000. At the same time the corporation, which was indebted to the defendant in the amount of $10,500, gave him a note secured by a chattel mortgage on the machinery and equipment of the corporation. This transaction occurred 2 years before plaintiffs negotiated for the purchase of the machinery and equipment. Defendant surrendered the old note and mortgage when plaintiffs purchased the machinery and equipment of the corporation and took in its place the new note and mortgage executed by plaintiffs to the corporation and which was simultaneously assigned to the

defendant by the corporation in exchange for the one surrendered.

The case was correctly decided. Therefore the judgment is affirmed.

Judgment affirmed.

BRYANT, PJ and FRIEND, J, concur.